IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **Voice Tech Corporation,** | |
| Plaintiff, | |
| vs. | Case No. 4:20-cv-00111-RK |
| **Mycroft AI Inc.,** | Jury Trial Demanded |
| Defendant. | |

**PLAINTIFF VOICE TECH CORPORATION'S
SUGGESTIONS IN SUPPORT OF MOTION FOR RELIEF TO
REQUIRE DECOROUS AND CIVIL CONDUCT BY THE PARTIES**

**I.   INTRODUCTION**

This is a straightforward patent infringement action, which Plaintiff Voice Tech Corporation ("Voice Tech") sought to resolve directly with Defendant Mycroft AI Inc. ("Mycroft") even before filing suit. Regrettably, however, Mycroft, through its CEO/First Officer, Joshua Montgomery, has responded to Voice Tech's professional and respectful handling of this business dispute with an aggressive campaign of harassment, identity theft, cyber-attacks, and even death threats directed personally at Voice Tech's counsel, Tod Tumey, and Mr. Tumey's family.[1] Under these extraordinary circumstances, Voice Tech brings this Motion to ask the Court's intervention at the outset of this case to require Mycroft and Montgomery to remove the threatening content it has published online and cease its assaultive campaign against Mr. Tumey and his family; to admonish Mycroft and Montgomery that such bad faith conduct is unacceptable and will not be tolerated; to express the Court's expectation and requirement that the parties will refrain from such abusive behavior going forward; and to place Mycroft and Montgomery on

---

[1] Since the bad faith conduct identified in this Motion, Montgomery has been replaced as CEO and changed his title to "First Officer."

notice that they may be subjected to further sanctions and consequences for their misconduct should they fail to heed the Court's direction.

Voice Tech plans on conducting this case professionally and with civility. In short, by this Motion, it merely seeks an order requiring Mycroft and Montgomery to do the same.

## II.     MYCROFT'S THREATS AND BAD FAITH CONDUCT

Voice Tech owns two patents that it believes Mycroft infringes.[2] On November 11, 2019, counsel for Voice Tech began sending correspondence to Mycroft's CEO/First Officer, Joshua Montgomery, in an effort to address Mycroft's infringement without resorting to litigation. *See* **Exhibit 1** attached to Declaration of Tod T. Tumey. As the correspondence record reflects, after Mycroft and its counsel ignored Voice Tech's overtures for over two months, Voice Tech advised Mycroft's counsel that it would be proceeding with its lawsuit, and then filed a patent infringement complaint in the Eastern District of Texas,[3] which it served on Mycroft on January 31, 2020. *See* **Exhibits 2-13**. To be clear, the parties' correspondence throughout that period was in writing, and the record of it has been tendered to the Court as **Exhibits 1-8** and **10-12** to this Motion. *See* Tumey Declaration at ¶ 2. As such, the Court can readily see for itself that Voice Tech and its counsel were professional and conciliatory in all of their communications with Mycroft and did nothing to instigate Mycroft/Montgomery's hostile and abusive actions.

Yet, almost immediately after serving Mycroft, Voice Tech's law firm, Tumey L.L.P., began receiving harassing phone calls in which someone would call its office and breathe heavily before hanging up. *See* Declaration of Marisa Robinson at ¶ 2, attached hereto. This is not a normal occurrence for Tumey L.L.P. *See id*. Then, less than a week later, on February 5, 2020, Mycroft

---

[2] U.S. Patent Nos. 9,794,348 and 10,491,679.

[3] *Voice Tech Corporation v. Mycroft AI, Inc.*, No. 6:20-cv-00015-JDK, in the United States District Court for the Eastern District of Texas.

published an article on its website, written by Mycroft's CEO/First Officer, Joshua Montgomery, and showing him photographed in chainmail, which argued that, in dealing with plaintiffs' counsel like Voice Tech's, "it's better to be aggressive and 'stab, shoot and hang' them then dissolve them in acid." *See* **Exhibit 14**. The next day Mycroft republished this article advocating for Voice Tech's counsel's grisly death and posthumous corpse desecration on its Facebook page, its Twitter account, and Reddit. *See* **Exhibits 15-17**. Then, that evening, a little after midnight, the following email linking to Mycroft's online diatribe was sent to Tumey L.L.P.'s general email account through its website:

```
Name
You Major Dumb Fuck
Email
fuck.yourself@tumeyllp.com
Subject
Good job You Major Dumb Fuck, you are famous now as a terrible human being!
Message
https://www.reddit.com/r/Mycroftai/comments/ezrf19/mycroft_is_being_targeted_by_a_patent_troll/
Also all your email conversations are posted in their website XD
Optin
True
```

*See* **Exhibit 18**.

The timing and nature of this email strongly suggested that Montgomery (or, at the very least, someone acting for him/Mycroft) sent it. Indeed, it includes a link to Montgomery's Reddit post, and brags about posting Mr. Tumey's correspondence on the Mycroft website—something, presumably, only Montgomery or someone else at Mycroft could have done. *See id*. Moreover, the subsequent avalanche of orchestrated assaults on Mr. Tumey and his firm further evidence a purposeful campaign by Montgomery/Mycroft against counsel in apparent retribution for Voice Tech's orderly, lawful pursuit of its rights through the justice system:

First, the next morning after receiving the email shown above, Tumey L.L.P. received another email to its general email account seemingly from the same source (*i.e.*,

Montgomery/Mycroft), which, among other hostile content, recommended—in graphic and highly disturbing terms—death and acts of violence against counsel (as Montgomery's online post had also done):

```
Name
Doesn't Matter
Email
dm@gofuckyourself.com
Subject
You are fucking pieces of shit
Message
You are a worthless piece of shit who helps worthless pieces of shit fuck everything up. You should drop all patent troll lawsuits you have filed, and then drown yourself with a red hot iron rod shoved up your ass. Fuck you and everything you stand for!
Optin
False
```

*See* **Exhibit 19**. Then, that night, a little after midnight (CST), yet another threatening email was sent to Tumey L.L.P.'s general email address stating that "you all deserve horrible things. Every one of you." *See* **Exhibit 22**. A few hours later, around 3 a.m., additional insulting emails of a similar nature were sent to the Tumey L.L.P.'s general email account. *See* **Exhibits 23-25**. And, about 30 minutes later, Mr. Tumey received an alert that someone had tried to hack into his Facebook account, and another alert that an attempt had also been made to create a Twitter account using his name. *See* **Exhibits 26-27**. Mere minutes later, someone used Mr. Tumey's personal information to sign him up for various online memberships. *See* **Exhibits 28-30**. And then, a few minutes after that, also signed Mr. Tumey up for multiple mailing lists. *See* **Exhibits 31-32**.

About 15 minutes later, a little after 4 a.m., Mr. Tumey's identity and personal contact information were used to submit multiple inquiries to various sources about debt relief services and insurance quotes, among other things. *See* **Exhibits 34-37**. One such insurance quote specifically asked for information related to one of Mr. Tumey's family vehicles, an Audi. *See* **Exhibit 35**. This unsettling invasion of Mr. Tumey's privacy was followed up with an ominous email to Tumey L.L.P. stating "Nice Audi." *See* **Exhibit 38**.

Soon after, unauthorized efforts were made to access (and presumably tamper with) Tumey L.L.P.'s GoDaddy® account for its website, and even more requests for insurance quotes and quotes for various services were submitted under the guise of Mr. Tumey's identity. *See* **Exhibits 40-45**. Then, just before 6 a.m., someone began signing Mr. Tumey up for various pornography websites. *See* **Exhibits 46-48**. About an hour after that, the culprit resumed signing Mr. Tumey up for even more mailing lists, generating notices to Mr. Tumey that attempts had been made to sign him up for roughly 40 different email mailing lists.[4] *See* **Exhibits 49-89**.

Later that day, February 8, 2020, as a result of the online attack he had been suffering, Mr. Tumey received follow-up emails and messages from various businesses regarding the myriad online inquiries that had been made under his name. *See* **Exhibits 92** and **95**; *see also* Tumey Declaration at ¶ 3. The next day, February 9, 2020 (Sunday), an email address usurping Mr. Tumey's name (TodTumey@gmx.com) was used to send a very disturbing, violence-filled, rambling email to Mr. Tumey. *See* **Exhibits 93-94**.

The timing and pattern of these activities, as well as the nature of the emails, and similarities and connections with Montgomery's published posts led Voice Tech's counsel to conclude that Montgomery, alone or in concert with others, was most likely the individual behind this onslaught of harassment.

Fearful of Montgomery's vitriolic assaults and seeming lack of limits, Mr. Tumey notified the police, increased security at his home for the protection of his family, and similarly increased security precautions at Tumey L.L.P., including locking the firm's doors at all times, bolstering its online security systems, and alerting its building security and property management. *See* Tumey Declaration at ¶ 4. In the wake of this abuse, and in an effort to further protect Mr. Tumey, his

---

[4] These mailing lists were from the same source as **Exhibits 31-32**.

family, and his firm from potential risk, on February 11, 2020, Voice Tech voluntarily dismissed the infringement lawsuit in Texas with a view towards refiling it in Missouri (*i.e.*, in Mycroft's home state and away from Mr. Tumey's residence and business) in hopes that it might temper Mycroft's bad faith conduct, avoid any disputes over venue, and more efficiently allow the litigation to proceed on the merits. *See* **Exhibit 96**. Voice Tech refiled here a week later.

Montgomery, in response, purported to claim victory by virtue of the voluntary dismissal and—consistent with the fact that he/Mycroft had been behind the flurry of assaultive behavior—the "anonymous" emails and online harassment all abruptly stopped.[5] Voice Tech and its counsel, however, remain gravely concerned that his misconduct will resume—if not worsen—as the case proceeds.[6]

Accordingly, to protect not only the safety and well-being of the persons involved, but also the sanctity of this proceeding, Voice Tech brings its Motion seeking this Court's intervention to require a base level of civil conduct going forward in this action.

### III. LEGAL STANDARD

According to the Eighth Circuit, it is well-settled that a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power." *Van Deelen v. City of Kansas City, Missouri*, No. 04-989-CV WGAF, 2006 WL 2077640, at *13 (W.D. Mo. July 24, 2006), *aff'd as modified*, 262 F. App'x 723 (8th Cir. 2007) (quoting *Bass v. General Motors Corp.,* 150 F.3d 842, 851 (8th Cir. 1998)); *see also Sylla-Sawdon v. Uniroyal Goodrich Tire*

---

[5] Voice Tech also attaches a timeline of the conduct described herein. *See* **Exhibit 97**. When viewed in sequence chronologically, Voice Tech respectfully submits that it is evident that one individual (Montgomery) was behind the campaign of harassment and intimidation.

[6] In response to Montgomery/Mycroft's posts calling on others to join his crusade against Voice Tech, Voice Tech's counsel did receive a few other messages and emails from individuals complaining about the patent infringement case, but these other messages identified the individual sending the message, and the nature of those messages was different. *See* **Exhibits 20, 33, 39, 90,** and **91**.

*Co.,* 47 F.3d 277, 280 (8th Cir. 1995); *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 267 (8th Cir. 1993). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id*. (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-31 (1962)). "Because of the potency of inherent powers, '[a] court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction.'" *Id*. (quoting *Plaintiffs' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (quoting *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993)); *see also Chambers*, 501 U.S. at 44-45. "Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.'" *Id*. (quoting *Harlan,* 982 F.2d at 1259 (*quoting Chambers,* 501 U.S. at 43-45)). "[W]hereas each of the other mechanisms [outlined in the Federal Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id*. (quoting *Chambers,* 501 U.S. at 46).

For example, in *Frumkin* the Eighth Circuit affirmed a district court's issuance of a restraining order in light of death threats by the plaintiff against witnesses in the case. *Frumkin v. Mayo Clinic*, 965 F.2d 620, 627 (8th Cir. 1992). Further, the district court stated that it would dismiss the suit if the plaintiff disobeyed the restraining order, and the Eighth Circuit stated that even if the district court had chosen to dismiss the case, "we would have found it difficult to reverse." *Id*. In another case, *Harlan*, the Eighth Circuit affirmed a district court's application of its inherent powers to impose a $5,000 monetary sanction against an attorney who engaged in two

unauthorized ex parte communications with nonparty treating physicians. *Harlan*, 982 F.2d at 1265.

District Courts in other parts of the country have reached similar conclusions. In *Petito v. Brewster*, No. 3-08-CV-0006-L, 2008 WL 631326, at \*1 (N.D. Tex. Mar. 10, 2008), the plaintiff made death threats against witnesses. The plaintiff's death threats were made in two emails wherein the plaintiff referred to "known families in New York and New Jersey" and "contracts" on the witnesses. *Petito*, 2008 WL 631326 at \*1-2. After reviewing the plaintiff's emails, the district court found that "[t]he court has little difficulty in concluding that a litigant who threatens to cause physical harm to another party or attorney has 'defiled the very temple of justice' and acted in bad faith." *Id*. at \*2. The district court also stated that even if it were inclined to accept the plaintiff's "bizarre explanations," the emails still constituted "bad faith litigation conduct." *Id*. at \*3. The district court then granted the motion for sanctions and sanctioned the plaintiff $500 for sending the threatening emails to opposing counsel. *Id*.

In *Muniz v. Harris*, No. 13-4343, 2018 WL 4252521, at \*1 (E.D. Pa. Sept. 4, 2018), the plaintiff sent a letter to the district court threatening violence against the district court and the defendant's witnesses. The district court found that "[w]hen a party to a lawsuit…abuses the litigation process in a manner utterly inconsistent with the orderly administration of justice or so as to undermine the integrity of the judicial process, the court has the inherent power to dismiss the suit." *Muniz*, 2018 WL 4252521 at \*3 (quoting *Richardson v. Cabarrus County Bd. of Educ.*, 1998 WL 371999, at \*2 (4th Cir. June 9, 1998)). The district court also found that regardless of the plaintiff's motive, "his conduct was part of a deliberate plan to manipulate the judicial system." *Id*. The court further stated that "the sanctions should serve 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

- 8 -
Case 4:20-cv-00111-RK   Document 15   Filed 04/02/20   Page 8 of 11

such conduct in the absence of such a deterrent.'" *Id.* (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

In this case, Mycroft's threatening suggestions of physical harm and death towards Voice Tech's counsel,[7] as well as its litany of other harassing and abusive behavior, are antithetical to an orderly and fair judicial process, and undermine the sanctity of this proceeding. As the above authorities demonstrate, it is well within this Court's inherent authority to make it clear that such conduct will not be tolerated. Indeed, Voice Tech notes that, even in the absence of the extraordinary circumstances of this case, courts routinely issue orders and adopt standing procedures directing civil and professional behavior by those appearing before them. *See, e.g.*, this Court's "Courtroom Procedures and Decorum Policy." Here, Voice Tech respectfully submits that a pointed order to require such conduct in this case is uniquely appropriate and necessary.

Accordingly, Voice Tech requests that its Motion be granted.

## IV. CONCLUSION

The Court has a great deal of discretion in dealing with the very troubling type of behavior that has occurred in this case. From the beginning, Voice Tech's counsel has sought to resolve the patent infringement issues professionally and only filed its lawsuit after months of being ignored. *See* **Exhibits 1-8** and **10-12**. Voice Tech submits that such courtesy and professionalism should be observed by all in this action. Unfortunately, however, Mycroft's pattern of abusive conduct is inconsistent with this basic tenet. Accordingly, and in light of the record in this matter, Voice Tech has filed this Motion to ask the Court to step in to set a baseline for its expectations going forward.

---

[7] Voice Tech anticipates that Mycroft may argue that its CEO/First Officer's threatening comments did not directly indicate he would follow through to do violence against Voice Tech or its counsel. Such an argument, on its face, would in no way exonerate or excuse Mycroft/Montgomery, and would serve only to exhibit a lack of remorse. Moreover, even in cases where the threats are vague or veiled, district courts have taken this type of behavior no less seriously. *Petito*, 2008 WL 631326 at *3.

- 9 -
Case 4:20-cv-00111-RK   Document 15   Filed 04/02/20   Page 9 of 11

Voice Tech respectfully submits that it is important that this issue be addressed at the beginning of this case to deter any recurrence of the abuse that has been inflicted upon Voice Tech and its counsel, and to allow this case to proceed and be heard without fear of personal reprisals, so that justice may be done.

Dated: April 2, 2020.

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: */s/ Stacey R. Gilman*
Stacey R. Gilman (MO Bar #55690)
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
(816) 561-7007
(816) 561-1888 *fax*
sgilman@berkowitzoliver.com

**-and-**

**TUMEY L.L.P.**
Tod T. Tumey (*admitted pro hac vice*)
Eric M. Adams (*admitted pro hac vice*)
5177 Richmond Avenue, Suite 1188
Houston, Texas 77056
(713) 622-7005
(713) 622-0220 *fax*
ttumey@tumeyllp.com
eadams@tumeyllp.com

ATTORNEYS FOR PLAINTIFF
VOICE TECH CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April 2020, the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's ECF system upon the following:

Christopher M. DeBacker
chris@midwestip.com
LAW OFFICE OF MARK BROWN
7225 Renner Rd, Suite 201
Shawnee, KS 66217

Hissan Anis
Hissan.anis@lathropgpm.com
A. Justin Poplin
Justin.poplin@lathropgpm.com
LATHROP GPM
10851 Mastin Blvd.
Building 82, Suite 1000
Overland Park, KS 66210

*/s/ Stacey R. Gilman*
Stacey R. Gilman
ATTORNEY FOR PLAINTIFF
VOICE TECH CORPORATION